Bruce D. Katz, Esq. (BK-2041)
Bruce D. Katz & Associates
225 Broadway – 37th Floor.
New York, NY  10007
(212)233-3434

*Attorneys for Plaintiff*
Forecast Consoles, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| FORECAST CONSOLES, INC., | ) | ECF CASE |
| | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| | ) | **(JURY TRIAL** |
| | ) | **DEMANDED)** |
| v. | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. |
| TBC CONSOLES, INC., TIME BASE | ) | |
| CORPORATION and JERRY HAHN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

Plaintiff, Forecast Consoles, Inc. ("FORECAST" or "Plaintiff"), by its undersigned

counsel, hereby files this Complaint against Defendants, TBC Consoles, Inc., Time Base

Corporation and Jerry Hahn ("Defendants"), and states as follows:

## SUBSTANCE OF THIS ACTION

1.     This is an action for infringement of patent and trademark rights in FORECAST's

media workstations, and for unfair competition and deceptive trade practices, arising out of

Defendants' malicious copying of the Patented Designs and distinctive Trade Dress of

FORECAST's immensely popular *MASTERail*™ modular media workstations, *SOHO*™ *SS-*

*NLE* and *RAPTOR*™ media workstations, and FORECAST's matching side tables.

2.     Plaintiff, FORECAST, makes this Complaint based on the shameful, egregious and blatant acts of piracy, willful patent infringement and willful trademark infringement by Defendant, Jerry Hahn and his "alter ego" Defendants, TBC Consoles, Inc. and Time Base Corporation (all of whom will be collectively referred to herein as "Defendants").  FORECAST seeks: (1) judgment that Defendants have willfully infringed FORECAST's U.S. Patent No. 7,125,088 covering FORECAST's immensely popular *MASTERail*™ modular workstations; (2) judgment that Defendants have willfully infringed FORECAST's media workstation-related design patents, including U.S. Patent Nos. D473,078 and D495,902 for the ornamental appearance of a desk and a desk side table, respectively; (3) judgment that Defendants have willfully infringed FORECAST's trademark rights in the distinctive design of its media workstations; (4) judgment that Defendants engaged in deceptive business practices by their plagiaristic and predatory acts of piracy and palming off; (5) an injunction against further acts of infringement; and (6) an award of the FORECAST's damages including damages for all lost and diverted sales made to Defendants, an award of Defendants' profits, treble and enhanced damages, attorneys' fees, and costs, all as provided by the Patent Statute and the Lanham Act.

## THE PARTIES

3.     Plaintiff, FORECAST, is a corporation duly organized and existing under the laws of the State of New York and having its principal place of business at 367c Bay Shore Road, Deer Park, New York, 11729.

4.     Upon information and belief, defendants, TBC Consoles, Inc. and Time Base Corporation, are corporations duly organized and existing under the laws of the State of New

York and having their principal place of business at 170 Rodeo Drive, Edgewood, New York, 11717.

5.    Upon information and belief, defendant, Jerry Hahn, an individual, is a resident of the State of New York, a principal, co-owner, officer, and director, of defendants TBC Consoles, Inc. and Time Base Corporation, and has directed, instigated, and continued, all of the infringing activities of piracy complained of herein for his own personal profit and gain and with knowledge of the illegality of such acts.

6.    Individual defendant, Jerry Hahn, is a former employee of FORECAST who contributed nothing of value to FORECAST while in its employ, and who left FORECAST to start his own competitive company using FORECAST's valuable trade secrets, proprietary designs, and by stealing FORECAST's customers.

## JURISDICTION AND VENUE

7.    This is an action arising under the Patent Statute, Title 35 U.S.C. §1 *et seq.*, the Trademark Act of 1946, Title 15 U.S.C. §1051 *et seq.* (the "Lanham Act"), and the laws of the State of New York relating to unfair competition, trademark dilution and deceptive trade practices.

8.    This Court has jurisdiction under Title 15 U.S.C. §1121 and Title 28 U.S.C. §§ 1331, 1338 and 1367.

9.    This Court has personal jurisdiction over the Defendants under N.Y. C.P.L.R. §§ 301 and 302 because the Defendants reside in and transact business in this state and the events giving rise to the Complaint occurred in this state and/or had effects in this state.

10.    Venue is proper in this District pursuant to Title 28 U.S.C. §§ 1391(b), (c) and 1400(b) because Defendants regularly do business, have committed acts of infringement, and are subject to personal jurisdiction here.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

11.    Since 1987, FORECAST has been engaged continuously in the design, manufacture and sale of technical furniture, including media workstations, desk side tables and related goods.

12.    Over the years, FORECAST has developed a reputation as an innovator of novel, unique and distinctive products of the highest level of quality and its workstations are sought by customers in various industries, notably the broadcast and film/television production industries.

13.    FORECAST's media workstations, desk side tables, and related goods, share various elements in common with similar goods produced by others, in that all such goods include legs, work surfaces, shelves and cabinet enclosures.  However, by virtue of FORECAST's design and configuration of each of these individual components, and their selection, arrangement, and the materials used for their manufacture, the overall appearance of FORECAST's workstations and related goods is highly unique, highly distinctive and uniquely recognizable by the consuming public.

14.    Specifically, the configuration, appearance, materials selection, finishes and unique shape of the individual elements, and the selection, combination and arrangement of these elements in FORECAST's media workstations results in products that are distinctive in appearance and uniquely recognizable as products of FORECAST.

### A. *FORECAST's MASTERail™ Media Workstations*

15.    For instance, since at least 2003 FORECAST has sold a line of modular, reconfigurable media workstations under its *MASTERail*™ trademark.  Photographs of a *MASTERail*™ workstations as shown by FORECAST at the 2005 and 2006 annual conference of the National Association of Broadcasters ("NAB") in Las Vegas, Nevada are annexed hereto as **Exhibit A**.

16.    The unique configuration of FORECAST's *MASTERail*™ workstations and the design and arrangement of its respective components serve as an indication to the relevant consuming public that the media workstation shown in Exhibit A is exclusively associated with a single source -- FORECAST.  By virtue of its highly distinctive design, FORECAST's *MASTERail*™ workstation is uniquely recognizable to consumers of such goods as emanating from a single source - FORECAST.

17.    The distinctive trade dress of FORECAST's *MASTERail*™ workstations includes the following elements (hereinafter referred to as "The *MASTERail*™ Trade Dress"):

(a)    The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

(b)    The overall appearance of the assembled parts forming the *MASTERail*™ workstations, including the low form factor of the *MASTERail*™ workstations, the curved edges and distinctive shapes of the work surfaces, the location and angle of orientation of the moveable turrets (or console boxes) relative to the plane of the work surfaces, the size and shape of the cabinets below the work surfaces, the size, shape and appearance of the cabinet doors, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of brushed, anodized aluminum components (in addition to wood, composite and/or steel) as an element of design;

(c)    The size, shape, appearance and materials of the hardware used for interconnecting components of *MASTERail*™ workstations, including the angled

shelf mounting brackets, the anodized aluminum extrusions having integral, longitudinally-extending T-shaped slots formed therein for slideably engaging moveable members of the workstations (such as the work surfaces, turrets and articulating monitor arms), the removable cabinet doors, and the articulating monitor arms;

(d)    The irregularly and distinctively-shaped appearance of the side panels (and the materials used for its fabrication) of the *MASTERail*™ workstations;

(e)    The arched feet of the *MASTERail*™ workstations;

(f)    The size, shape, configuration, appearance and materials of the workstation turrets, including their hinged, vented access panels and their ability to be laterally translated along the length of T-shaped slots formed in one of the anodized aluminum extrusions;

(g)    The rearwardly curved shape, external appearance and materials of the rear brushed, anodized aluminum extrusion provided near the upper rear portion of the turrets, and the T-shaped slot provided in the brushed anodized aluminum extrusions for slideably engaging articulating display monitor arms;

(h)    The shape of the individual bays of the workstations;

(i)    The absence of lower cabinets in selected bays of the workstations;

(j)    The shape, appearance, and materials used to fabricate the work surface of the workstations; and

(k)    The shape, appearance, use of, and materials of the "pie-shaped" inserts used to fill gaps between adjacent bays in the workstations.

**B.  *FORECAST's SOHO*™ *SS-NLE Workstation***

18.    In addition to its hugely popular *MASTERail*™ modular workstations, FORECAST also sells media workstations under its *SOHO*™ trademark.  Like the *MASTERail*™ workstations, FORECAST's *SOHO*™ workstations are uniquely recognizable as products originating from FORECAST by virtue of their highly distinctive design.

19.    A photograph of FORECAST's *SOHO*™ SS-NLE "Rise and Shine" workstation is annexed hereto as **Exhibit B.**  The design of FORECAST's *SOHO*™ SS-NLE workstation

6

incorporates distinctive features of FORECAST's "*MASTERail*™ Trade Dress" to result in a workstation that is uniquely identifiable as a product originating from FORECAST.

20.    The distinctive trade dress of FORECAST's *SOHO*™ SS-NLE workstation also includes the following elements (hereinafter referred to as the *SOHO*™ SS-NLE Trade Dress"):

(a)    The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

(b)    The overall appearance of the assembled parts forming the *SOHO*™ SS-NLE desk, including the unique shape, color and finish of the work surface, the location and angle of orientation of the turrets relative to the work surface, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of anodized aluminum components as an element of design;

(c)    The distinctive shape of the articulating legs of the SS-NLE desk, including the presence of slots in the legs; and

(d)    The size, shape, appearance and materials of the workstation turrets, including the anodized aluminum extrusion thereon.

## C. *FORECAST's RAPTOR Media Workstations*

21.    FORECAST also sells a line of media workstations under its *RAPTOR*™ trademark.  FORECAST's *RAPTOR*™ workstations are uniquely recognizable as products of FORECAST by virtue of their highly distinctive design.

22.    A diagram of FORECAST's *RAPTOR*™ workstation is annexed hereto as **Exhibit C.**  The design of FORECAST's *RAPTOR*™ workstation incorporates various features of FORECAST's "*MASTERail*™ Trade Dress" to result in a workstation that is uniquely identifiable as a product originating from FORECAST.

23.    The distinctive trade dress of FORECAST's *RAPTOR*™ workstations also includes the following elements (hereinafter referred to as the "*RAPTOR*™ Trade Dress"):

(a)    The overall appearance of the assembled parts forming the *RAPTOR™* desk, including the unique concave shape of the work surface, the location and angle of orientation of the optional turrets relative to the work surface; and

(b)    The arched legs and irregularly shaped shelf.

## D.  *The FORECAST Side Table*

24.    FORECAST also sells matching patented side tables to complement its *MASTERail™, SOHO™* and *RAPTOR™* workstations.  Like its other products, FORECAST's patented side tables are uniquely recognizable as products of FORECAST by virtue of their highly distinctive design.

25.    A diagram of FORECAST's patented side table is annexed hereto as **Exhibit D.** The design of FORECAST's patented side table workstation incorporates various features of FORECAST's "*MASTERail™* Trade Dress" to result in a side table that is uniquely identifiable as a product originating from FORECAST.

26.    The distinctive trade dress of FORECAST's side table also includes the following elements (hereinafter referred to as the "Side Table Trade Dress"):

(a)    The overall appearance of the side tables;

(b)    The shape, materials and appearance of the top, bottom and side panels of the side tables that match the appearance of the work surface of the accompanying work station; and

(c)    The shape, materials and appearance of the aluminum corner members of the side tables that match the appearance of the extrusions contained in the matching workstations.

## E.  *FORECAST's Utility and Design Patents*

27.    FORECAST has taken steps to protect the novel utilitarian and distinctive features of its innovative designs.

8

28.     In addition to its rights in the distinctive trade dress of its media workstations and side tables, FORECAST owns various United States patents relating to the utilitarian features and ornamental designs of its media workstations and side tables.

29.     For instance, FORECAST is and has been the owner of all right, title, and interest to, *inter alia,* U.S. Patent No. 6,857,712 ("the '712 patent") relating to the novel utilitarian aspects of its steel-framed, modular media workstations including its *MASTERRail*™ modular workstations.

30.     In fact, Defendants' willful infringement of FORECAST's '712 patent is the subject of a pending lawsuit filed in this Court on March 10, 2005 and assigned Civil Action No. 2:05-CV-2756(KMW).  In that action, FORECAST alleges that Defendants' *intelliTRAC* media consoles infringe one or more claims of the '712 patent and that Defendants' use of the mark *intelli*TRAC infringes FORECAST's rights in its *MASTERRail*™ trademark for the same goods.  The lawsuit is currently stayed pending the outcome of a reexamination proceeding initiated by FORECAST relating to the '712 patent.

31.     FORECAST is also the owner of all right, title, and interest to U.S. Patent Nos. 6,986,556 ("the '556 patent) and 7,125,088 ("the '088 patent) relating to the novel utilitarian aspects of its steel-framed, modular media workstations including its *MASTERRail*™ modular workstations.  A copy of the '556 patent is annexed hereto as **Exhibit E**.  A copy of the '088 patent is annexed hereto as **Exhibit F**.

32.     The '088 patent issued on October 24, 2006 for an invention entitled "MULTI-MEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM" and lists William G. Haberman as the sole inventor.  All right, title and interest in the '088 patent has been assigned to

FORECAST by virtue of an assignment that has been duly recorded at the United States Patent and Trademark Office.

33.    The '088 patent is a continuation of Application Serial No. 11/005,064, filed on December 6, 2004, which is a division of Application Serial No. 10/407,436, filed on April 4, 2003, which is now U.S. Patent No. 6,857,712.

34.    The '088 patent is directed to, for example, a multi-media workstation having, *inter alia,* a master rail system for permitting horizontal adjustment of the various components of the workstation.

35.    The technology covered by the '088 patent has been widely commercialized by FORECAST to produce multi-media workstations having various components capable of horizontal adjustment.

36.    As described below, on information and belief, TBC has utilized the invention claimed in the '088 patent by engaging in the manufacture and sale of its *intelliTRAC* multi-media workstations, and/or parts therefor, that directly and/or contributorily infringe one or more claims of the '088 patent.

37.    In addition to the above-described utility patents, FORECAST is and has been the owner of all right, title, and interest to two design patents, namely U.S. Patent No. D473,078, for the ornamental appearance of a desk ("the '078 patent"), and U.S. Patent No. D495,902, for the ornamental appearance of a desk side table ("the '902 patent").  A copy of the '078 patent is annexed hereto as **Exhibit G.**  A copy of the '902 patent is annexed hereto as **Exhibit H.**

## GENERAL ALLEGATIONS-DEFENDANTS' INFRINGING ACTIVITIES

38.    On information and belief, Defendants TBC Consoles, Inc. and Time Base Corporation (collectively "TBC') were formed by former FORECAST employee Defendant Jerry Hahn.

39.    On information and belief, Jerry Hahn formed TBC for the purpose of selling knock-offs of FORECAST's products.

40.    TBC is engaged in the same business as FORECAST, the manufacture and sale of media workstations.  In connection with its business activities, TBC competes for the same customers as FORECAST.

41.    TBC's product line closely parallels FORECAST's product line.  For each previously-existing FORECAST workstation, TBC has introduced a competing, knock-off workstation that TBC markets to the same customers and potential customers as FORECAST.

42.    TBC's manufacture, sale and offer for sale of knock-off products has resulted in widespread consumer confusion.

43.    In fact, over the years, TBC's appropriation of FORECAST's product designs has grown increasingly frequent and increasingly blatant.  As a result, TBC's product line has grown increasingly similar to FORECAST's product line.

### *F.  TBC's intelliTRAC Media Workstations*

44.    For instance, after seeing FORECAST's *MASTERail*™ modular workstation displayed by FORECAST at the 2005 NAB convention in Las Vegas, TBC set out to produce a knock-off of the *MASTERail*™ workstation.

11

45.    Consequently, in 2005, TBC began to manufacture, sell and offer for sale a knock-off of FORECAST's *MASTERail*™ modular workstations under the confusingly similar trademark *intelliTRAC*.  A photograph of TBC's *intelliTRAC* workstation is annexed hereto as **Exhibit I.**

46.    TBC's *intelliTRAC* workstation appropriates FORECAST's *MASTERail*™ Trade Dress in that it shares, *inter alia,* the following similarities:

(a)    The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

(b)    The overall appearance of the assembled parts forming the *intelliTRAC* workstations, including the low form factor of the *intelliTRAC* workstations, the curved edges and distinctive shapes of the work surfaces, the location and angle of orientation of the moveable turrets (or console boxes) relative to the plane of the work surfaces, the size and shape of the cabinets below the work surfaces, the size, shape and appearance of the cabinet doors, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of brushed, anodized aluminum components (in addition to wood, composite and/or or steel) as an element of design;

(c)    The size, shape, appearance and materials of the hardware used for interconnecting components of the *intelliTRAC* workstations, including the angled shelf mounting brackets, the anodized aluminum extrusions having integral, longitudinally-extending T-shaped slots formed therein for slideably engaging moveable members of the workstations (such as the work surfaces, turrets and articulating monitor arms), the removable cabinet doors, and the articulating monitor arms;

(d)    The irregularly and distinctively-shaped appearance of the side panels (and the materials used for its fabrication) of the *intelliTRAC* workstations;

(e)    The arched feet of the *intelliTRAC* workstations;

(f)    The size, shape, configuration, appearance and materials of the workstation turrets, including their hinged, vented access panels and their ability to be laterally translated along the length of T-shaped slots formed in one of the anodized aluminum extrusions;

(g)    The rearwardly curved shape, external appearance and materials of the rear brushed, anodized aluminum extrusion provided near the upper rear portion of the turrets, and the T-shaped slot provided in the brushed anodized aluminum extrusions for slideably engaging articulating display monitor arms;

(h)    The shape of the individual bays of the workstations;

(i)    The absence of lower cabinets in selected bays of the workstations;

(j)    The shape, appearance, and materials used to fabricate the work surface of the workstations; and

(k)    The shape, appearance, use of, and materials of the "pie-shaped" inserts used to fill gaps between adjacent bays in the workstations.

## G.  *TBC's smartTRAC Media Workstations*

47.    TBC also offers for sale a knock-off of FORECAST's *SOHO*™ SS-NLE editing

desk under the name *smartTRAC.*  A photograph of TBC's *smartTRAC* workstation is annexed

hereto as **Exhibit J.**

48.    TBC's *smartTRAC* workstation appropriates FORECAST's "*SOHO*™ SS-NLE

Trade Dress" in that it shares, *inter alia,* the following similarities:

(a)    The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

(b)    The overall appearance of the assembled parts forming the *smartTRAC* desk, including the unique shape, color and finish of the work surface, the location and angle of orientation of the turrets relative to the work surface, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of anodized aluminum components as an element of design;

(c)    The distinctive shape of the articulating legs of the *smartTRAC* desk, including the presence of slots in the legs; and

(d)    The size, shape, appearance and materials of the workstation turrets, including the anodized aluminum extrusion thereon.

### H.  *TBC's Crossfire Desks*

49.    TBC also offers for sale a knock-off of FORECAST's *RAPTOR™* workstations under the name *CROSSFIRE*.  A photograph of TBC's *CROSSFIRE* workstation is annexed hereto as **Exhibit K.**

50.    TBC's *CROSSFIRE* workstations appropriate FORECAST's "*RAPTOR™* Trade Dress" in that they share, *inter alia,* the following similarities:

(a)    The overall appearance of the assembled parts forming the *RAPTOR™* desk, including the unique concave shape of the work surface, the location and angle of orientation of the optional turrets relative to the work surface; and

(b)    The arched legs and irregularly shaped shelf.

### I.  *TBC'S Infringing Side Tables*

51.    TBC also offers for sale knock-offs of FORECAST's patented Side Tables.  A photograph of TBC's infringing Side Table is annexed hereto as **Exhibit L.**

52.    TBC's infringing Side Tables appropriate FORECAST's "Side Table Trade Dress" in that it shares, *inter alia,* the following similarities:

(a)    The overall appearance of the side tables;

(b)    The shape, materials and appearance of the top, bottom and side panels of the side tables that match the appearance of the work surface of the accompanying work station; and

(c)    The shape, materials and appearance of the aluminum corner members of the side tables that match the appearance of the extrusions contained in the matching workstations.

53.    Accordingly, on information and belief, Defendants' *intelliTRAC, smartTRAC* and, *CROSSFIRE* workstations and desk side tables infringe FORECAST's *MASTERail™* Trade

Dress, *SOHO*™ SS-NLE Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress, respectively.

54.    Defendants manufacture their infringing products in the United States, and promote, offer to sell, and sell the infringing products in competition with FORECAST.  On information and belief, Defendants intentionally designed their infringing products to look like FORECAST's competing media workstations.

55.    The public is likely to be harmed by Defendants' actions, as customers will be confused or deceived into purchasing Defendants' workstations thinking they are FORECAST's workstations or that they are made by or approved, sponsored or endorsed by FORECAST, or in some other way connected to FORECAST or FORECAST's products – when, in fact, they are infringing patents the purchase of which can result in a lawsuit against the consumer.

56.    Upon information and belief, Defendants willfully appropriated FORECAST's patented designs and the *MASTERail*™ Trade Dress, the *SOHO*™ SS-NLE Trade Dress, the *RAPTOR* Trade Dress and the Side Table Trade Dress with knowledge of FORECAST's exclusive rights therein.

57.    By their actions, Defendants are harming FORECAST, its reputation and its goodwill irreparably and, unless permanently enjoined, will continue to do so.  FORECAST has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. 7,125,088

58.    FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 57 above, inclusive, and incorporates the same by reference herein.

59.    Defendants have made, used, sold and/or offered to sell and/or advertised, and will continue to make, use, sell and/or offer to sell and/or advertise, media workstations, including their *intelliTRAC* workstations, and/or parts therefor, that directly and/or contributorily infringe each of the elements of one or more claims of the '088 patent, without license from FORECAST, in this Judicial District and elsewhere throughout the United States.

60.    By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have directly and/or contributorily infringed, and will continue to directly and/or contributorily infringe, one or more claims of the '088 patent under 35 U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

61.    By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have induced infringement of, and will continue to induce infringement of, one or more claims of the '088 patent under 35 U.S.C. §271 (b), and/or (f), literally and/or under the doctrine of equivalents.

62.    On information and belief, Defendants' infringement of the '088 patent has been and continues to be willful and deliberate, making this an exceptional case.

63.    As a direct and proximate consequence of the acts and practices of Defendants, FORECAST has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured, in its business and property rights, and has suffered, is suffering, and will continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

64.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the

Court, will continue to cause irreparable harm to FORECAST, for which there is no adequate

remedy at law, and for which FORECAST is entitled to injunctive relief under 35 U.S.C. §283.

## SECOND CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. D473,078

65.    FORECAST repeats and re-alleges each and every allegation set forth in paragraphs

1 through 64 above, inclusive, and incorporates the same by reference herein.

66.    Defendants have made, used, sold and/or offered to sell and/or advertised, and will

continue to make, use, sell and/or offer to sell and/or advertise, media workstations, including

their *CROSSFIRE* workstations, and/or parts therefor, that directly and/or contributorily infringe

the '078 patent, without license from FORECAST, in this Judicial District and elsewhere

throughout the United States.

67.    By making, using, selling, and/or offering for sale and/or advertising their infringing

media workstations and/or parts therefor, Defendants have directly and/or contributorily

infringed, and will continue to directly and/or contributorily infringe, the '078 patent under 35

U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

68.    By making, using, selling, and/or offering for sale and/or advertising their infringing

media workstations and/or parts therefor, Defendants have induced infringement of, and will

continue to induce infringement of, the '078 patent under 35 U.S.C. §271 (b), and/or (f), literally

and/or under the doctrine of equivalents.

69.    On information and belief, Defendants' infringement of the '078 patent has been and

continues to be willful and deliberate, making this an exceptional case.

70.    As a direct and proximate consequence of the acts and practices of Defendants,

FORECAST has been, is being, and, unless such acts and practices are enjoined by the Court,

will continue to be injured, in its business and property rights, and has suffered, is suffering, and will continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

71.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to FORECAST, for which there is no adequate remedy at law, and for which FORECAST is entitled to injunctive relief under 35 U.S.C. §283.

### THIRD CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. D495,902

72.    FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 71 above, inclusive, and incorporates the same by reference herein.

73.    Defendants have made, used, sold and/or offered to sell and/or advertised, and will continue to make, use, sell and/or offer to sell and/or advertise, desk side tables and/or parts therefor, that directly and/or contributorily infringe the '902 patent, without license from FORECAST, in this Judicial District and elsewhere throughout the United States.

74.    By making, using, selling, and/or offering for sale and/or advertising their infringing desk side tables and/or parts therefor, Defendants have directly and/or contributorily infringed, and will continue to directly and/or contributorily infringe, the '902 patent under 35 U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

75.    By making, using, selling, and/or offering for sale and/or advertising their infringing desk side tables and/or parts therefor, Defendants have induced infringement of, and will continue to induce infringement of, the '902 patent under 35 U.S.C. §271 (b), and/or (f), literally and/or under the doctrine of equivalents.

76. On information and belief, Defendants' infringement of the '902 patent has been and continues to be willful and deliberate, making this an exceptional case.

77. As a direct and proximate consequence of the acts and practices of Defendants, FORECAST has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured, in its business and property rights, and has suffered, is suffering, and will continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

78. As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to FORECAST, for which there is no adequate remedy at law, and for which FORECAST is entitled to injunctive relief under 35 U.S.C. §283.

**FOURTH CLAIM FOR RELIEF**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a))**

79. FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 78 above, inclusive, and incorporates the same by reference herein.

80. Defendants' appropriation and/or simulation of indicia associated with FORECAST, including but not limited to the *MASTERail*™ Trade Dress, the *SOHO*™ *SS-NLE* Trade Dress*, the *RAPTOR* Trade Dress, and the Side Table Trade Dress, together or individually, constitutes false designation of origin and false representation with respect to Defendants' goods. Defendants' actions are likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods or as to a connection between the parties.

81. Defendants' actions constitute unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## FIFTH CLAIM FOR RELIEF
## FEDERAL TRADEMARK DILUTION (15 U.S.C. §43(c))

82.   FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 81 above, inclusive, and incorporates the same by reference herein.

83.   FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress are each famous, distinctive and well known in the United States in connection with media workstations.

84.   Defendants' adoption of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress commenced long after FORECAST's respective trade dresses had become famous.

85.   Defendants' adoption and use of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress for its media workstations is diluting and is likely to continue to dilute FORECAST's trade dresses in violation of 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

86.   Defendants willfully intended to dilute the distinctive quality of FORECAST'S *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress.

## SIXTH CLAIM FOR RELIEF - TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

87.   FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 87 above, inclusive, and incorporates the same by reference herein.

88.   Defendants have copied the trade dress of FORECAST's products with full knowledge of FORECAST's prior rights therein and of the reputation and success of

20

FORECAST's products sold under and bearing the *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress*, RAPTOR* Trade Dress and Side Table Trade Dress.  Defendants' imitation of the trade dress of FORECAST's products is for the willful and calculated purpose of misappropriating and trading on FORECAST's goodwill and business reputation.  Furthermore, Defendants have used imitations of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress*, RAPTOR* Trade Dress and Side Table Trade Dress for the willful and calculated purpose of causing confusion and mistake among the public and the trade and of deceiving the public and trade as to the nature and origin of Defendants' products, in violation of FORECAST's rights under the common law of the State of New York.

89.    Defendants' conduct constitutes common law trademark infringement and unfair competition under the laws of the State of New York.

## SEVENTH CLAIM FOR RELIEF
## DILUTION UNDER NEW YORK LAW (N.Y. Gen. Bus. Law § 360-1)

90.    FORECAST repeats and re-alleges each and every allegation set forth in paragraphs 1 through 89 above, inclusive, and incorporates the same by reference herein.

91.    Defendants' unauthorized adoption of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress*, RAPTOR* Trade Dress and Side Table Trade Dress is diluting and is likely to continue diluting FORECAST's famous and distinctive *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress*, RAPTOR* Trade Dress and Side Table Trade Dress and is likely to injure and has injured FORECAST's business reputation.  Any deficiencies in or complaints about Defendants' products will harm FORECAST.

92.    Defendants' conduct constitutes a violation of Section 360-l of the General

Business Law of the State of New York.

## EIGHTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES UNDER NEW YORK STATE LAW
## (N.Y. Gen. Bus. Law § 349)

93.    FORECAST repeats and re-alleges each and every allegation set forth in paragraphs

1 through 92 above, inclusive, and incorporates the same by reference herein.

94.    By reason of the acts set forth above, Defendants have been and are engaged in

deceptive acts or practices in the conduct of a business, trade or commerce in violation of

Section 349 of the New York General Business Law.

**WHEREFORE**, FORECAST respectfully demands judgment as follows:

1.    Judgment that Defendants willfully infringed FORECAST's U.S. Patent No.

7,125,088 in violation of 35 U.S.C. § 271(a).

2.    Judgment that Defendants willfully infringed FORECAST's U.S. Patent No.

D473,078 in violation of 35 U.S.C. § 271(a).

3.    Judgment that Defendants willfully infringed FORECAST's U.S. Patent No.

D495,902 in violation of 35 U.S.C. § 271(a).

4.    Judgment that Defendants willfully infringed FORECAST's *MASTERail*™ Trade

Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress in

violation of 17 U.S.C. §1125(a) and New York Law regarding trademarks.

5.    Judgment that Defendants engaged in unfair competition under New York Law.

22

6.    Judgment that Defendants diluted the distinctiveness of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress.

7.    That a preliminary and permanent injunction be issued enjoining Defendants, their officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors, licensees and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by Defendants, from:

(a)  further infringement of the FORECAST Patents by Defendants, their agents, servants, employees, officers, and all others controlled by Defendants;

(b) using making, using, selling, offering for sale and/or advertising their *intelliTRAC*, *smartTRAC* and *CROSSFIRE* products, or from making, using, selling, offering for sale, advertising and/or displaying any product comprising a simulation, reproduction, copy, counterfeit, colorable imitation or confusingly similar variation of any of FORECAST's *MASTERail*™ Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress;

(c) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with FORECAST or that any product manufactured, distributed or sold by Defendants are in any manner associated or connected with FORECAST and/or FORECAST's goods or services, or is authorized, licensed, sponsored or otherwise approved by FORECAST;

(d) engaging in any other activity constituting unfair competition with FORECAST, or constituting an infringement of any of FORECAST's patents and/or trademarks;

(e) diluting any of FORECAST's *MASTERail™* Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress; and

(f) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

8.    Directing that Defendants deliver up to FORECAST's attorney for destruction all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials currently in its possession or under its control incorporating, featuring or bearing any of Defendants' *intelliTRAC*, *smartTRAC* and *CROSSFIRE* and infringing side table products, or that includes any simulation, reproduction, copy or colorable imitation of any of FORECAST's *MASTERail™* Trade Dress, *SOHO SS-NLE* Trade Dress, *RAPTOR* Trade Dress and Side Table Trade Dress, and all plates, molds, matrices and other means of making the same.

9.    Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product manufactured, sold or otherwise circulated or promoted by Defendants within the United States is authorized by FORECAST or related in any way to FORECAST and/or FORECAST's goods or services, or that Defendants are otherwise affiliated with FORECAST.

10.    Directing that Defendants file with the Court and serve upon FORECAST's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

11.     Awarding FORECAST damages adequate to compensate FORECAST for the patent infringements that have occurred pursuant to 35 U.S.C. §284, which shall be trebled as a result of Defendants' willful patent infringement, or an award of Defendants' profits from its infringements pursuant to 35 U.S.C. §289, whichever is greater, together with prejudgment interest and costs.

12.     Awarding FORECAST such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement, willful dilution and unfair competition and all gains, profits, property and advantages derived by Defendants from their unlawful conduct, including but not limited to damages available to FORECAST pursuant to 35 U.S.C. §§ 284 and 289.

13.     Pursuant to 15 U.S.C. §1117(a), awarding FORECAST an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of the Lanham Act.

14.     Awarding to FORECAST exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

15.     Awarding to FORECAST its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117 and/or 35 U.S.C. §285.

16.     Awarding to FORECAST interest, including pre-judgment interest, on the foregoing sums.

17.     Awarding to FORECAST such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

FORECAST demands a trial by jury of all issues so triable.


Respectfully submitted,


Dated: April 17, 2007


/s/_____
By:  Bruce D. Katz, Esq. (BK-2041)
Bruce D. Katz & Associates
225 Broadway – 37th Floor.
New York, NY  10007
(212)233-3434

*Attorney for Plaintiff*
*Forecast Consoles, Inc.*