CARTER LEDYARD & MILBURN LLP
Keith D. Nowak, Esq. (KN-0230)
2 Wall Street
New York, NY 10005
Phone:  (212) 238-8610
Fax:    (212) 732-3232
Attorneys for Defendants TBC Consoles, Inc.,
Time Base Corporation and Jerry Hahn

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

FORECAST CONSOLES, INC.,             :     **ECF CASE**

                          :     **ANSWER, AFFIRMATIVE**
           Plaintiff,     :     **DEFENSES AND**
                          :     **COUNTERCLAIM**
     - against -     :     **(JURY TRIAL DEMANDED)**
                          :

TBC CONSOLES, INC., TIME BASE   :     **CIVIL ACTION NO. 07-CV-3106**
CORPORATION and JERRY HAHN    :     **(KMW)**
                          :

           Defendants.    :

------------------------------------------------------------ x

Defendants TBC CONSOLES, INC., TIME BASE CORPORATION and JERRY HAHN

(collectively "Defendants") hereby file this Answer and Counterclaim in response to the

Complaint filed by Plaintiff, FORECAST CONSOLES, INC. ("Forecast").

In response to the numbered paragraphs of Plaintiff's Complaint, Defendants state as

follows:

**SUBSTANCE OF THIS ACTION**

1.  This is an action for infringement of patent and trademark rights in Forecast's media

workstations, and for unfair competition and deceptive trade practices, arising out of Defendants'

malicious copying of the Patented Designs and distinctive Trade Dress of Forecast's immensely

popular Masterail modular media workstations, Soho SS-NLE and Raptor media workstations, and Forecast's matching side tables.

ANSWER  Defendants admit that this is an action for infringement of patent and trademark rights and for alleged unfair competition and deceptive trade practices.  Defendants deny the remainder of the averments in Paragraph 1.


2.  Plaintiff, Forecast, makes this Complaint based on the shameful, egregious and blatant acts of piracy, willful patent infringement and willful trademark infringement by Defendant, Jerry Hahn and his "alter ego" Defendants, TBC Consoles, Inc. and Time Base Corporation (all of whom will be collectively referred to herein as "Defendants").  Forecast seeks: (1) judgment that Defendants have willfully infringed Forecast's U.S. Patent No. 7,125,088 covering Forecast's immensely popular Masterail modular workstations; (2) judgment that Defendants have willfully infringed Forecast's media workstation-related design patents, including U.S. Patent Nos. D473,078 and D495,902 for the ornamental appearance of a desk and a desk side table, respectively; (3) judgment that Defendants have willfully infringed Forecast's trademark rights in the distinctive design of its media workstations; (4) judgment that Defendants engaged in deceptive business practices by their plagiaristic and predatory acts of piracy and palming off; (5) an injunction against further acts of infringement; and (6) an award of the Forecast's damages including damages for all lost and diverted sales made to Defendants, an award of Defendants' profits, treble and enhanced damages, attorneys' fees, and costs, all as provided by the Patent Statute and the Lanham Act.

ANSWER  Defendants deny each and every averment in Paragraph 2 of the Complaint, specifically including but not limited to, a denial of any acts of piracy, shameful or otherwise, a denial of infringement of any valid patent or trademark rights held by Forecast, a denial that

2

TBC Consoles Inc. and Time Base Corporation are the "alter ego" of Jerry Hahn, a denial that

the Masterail workstation is "immensely popular," which will be shown at trial, and a denial that

Defendants have engaged in any deceptive business practices whereby any claim by Forecast for

judgment, injunctive relief and/or damages should be stricken and dismissed with prejudice.


## THE PARTIES

3.  Plaintiff, Forecast, is a corporation duly organized and existing under the laws of the

State of New York and having its principal place of business at 367c Bay Shore Road, Deer

Park, New York, 11729.

ANSWER  Defendants admit the averments in Paragraph 3.


4.  Upon information and belief, defendants, TBC Consoles, Inc. and Time Base

Corporation, are corporations duly organized and existing under the laws of the State of New

York and having their principal place of business at 170 Rodeo Drive, Edgewood, New York,

11717.

ANSWER  Admitted with respect to Time Base Corporation.  Time Base Corporation

does business as TBC Consoles, Inc.


5.  Upon information and belief, defendant, Jerry Hahn, an individual, is a resident of the

State of New York, a principal, co-owner, officer, and director, of defendants TBC Consoles,

Inc. and Time Base Corporation, and has directed, instigated, and continued, all of the infringing

activities of piracy complained of herein for his own personal profit and gain and with

knowledge of the illegality of such acts.

6183877.2                                     3

ANSWER  Defendants admit that Jerry Hahn is a resident of the state of New York, a principal, co-owner, officer and director of TBC Consoles, Inc. and Time Base Corporation, but deny the remaining averments of Paragraph 5 of the Complaint.

6. Individual defendant, Jerry Hahn, is a former employee of Forecast who contributed nothing of value to Forecast while in its employ, and who left Forecast to start his own competitive company using Forecast's valuable trade secrets, proprietary designs, and by stealing Forecast's customers.

ANSWER  Defendants admit that Jerry Hahn is a former employee of Forecast but deny the remaining averments of Paragraph 6 of the Complaint, specifically including but not limited to, the averment that Mr. Hahn used any trade secrets or proprietary designs belonging to Forecast, that Mr. Hahn stole any Forecast customers and that Mr. Hahn did not contribute to Forecast while employed there.

## JURISDICTION AND VENUE

7. This is an action arising under the Patent Statute, Title 35 U.S.C. §1 *et seq.*, the Trademark Act of 1946, Title 15 U.S.C. §1051 *et seq.* (the "Lanham Act"), and the laws of the State of New York relating to unfair competition, trademark dilution and deceptive trade practices.

ANSWER  Defendants admit the averments in Paragraph 7.

8. This Court has jurisdiction under Title 15 U.S.C. §1121 and Title 28 U.S.C. §§ 1331, 1338 and 1367.

ANSWER  Defendants admit the averments in Paragraph 8

9. This Court has personal jurisdiction over the Defendants under N.Y. C.P.L.R. §§ 301 and 302 because the Defendants reside in and transact business in this state and the events giving rise to the Complaint occurred in this state and/or had effects in this state.

ANSWER  Defendants admit the averments in Paragraph 9.

10. Venue is proper in this District pursuant to Title 28 U.S.C. §§ 1391(b), (c) and 1400(b) because Defendants regularly do business, have committed acts of infringement, and are subject to personal jurisdiction here.

ANSWER  Defendants admit the averments with respect to venue in Paragraph 10, except deny that Defendants have committed any acts of infringement.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

11. Since 1987, Forecast has been engaged continuously in the design, manufacture and sale of technical furniture, including media workstations, desk side tables and related goods.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 11 of the Complaint are true and correct and therefore deny same.

12. Over the years, Forecast has developed a reputation as an innovator of novel, unique and distinctive products of the highest level of quality and its workstations are sought by customers in various industries, notably the broadcast and film/television production industries.

ANSWER  Defendants admit that Forecast has sold workstations in the broadcast, film and television production industries, but Defendants deny the remainder of the averments in Paragraph 12.

13.  Forecast's media workstations, desk side tables, and related goods, share various elements in common with similar goods produced by others, in that all such goods include legs, work surfaces, shelves and cabinet enclosures. However, by virtue of Forecast's design and configuration of each of these individual components, and their selection, arrangement, and the materials used for their manufacture, the overall appearance of Forecast's workstations and related goods is highly unique, highly distinctive and uniquely recognizable by the consuming public.

ANSWER  Defendants admit that all media workstations, desk side tables and related goods, including Forecast products, share elements in common with similar products produced by others, but Defendants deny the remainder of the averments in Paragraph 13.

14.  Specifically, the configuration, appearance, materials selection, finishes and unique shape of the individual elements, and the selection, combination and arrangement of these elements in Forecast's media workstations results in products that are distinctive in appearance and uniquely recognizable as products of Forecast.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 14 of the Complaint are true and correct and therefore deny same.

6183877.2

6

## A. *Forecast's Masterail Media Workstations*

15.  For instance, since at least 2003 Forecast has sold a line of modular, reconfigurable media workstations under its Masterail trademark. Photographs of a Masterail workstations as shown by Forecast at the 2005 and 2006 annual conference of the National Association of Broadcasters ("NAB") in Las Vegas, Nevada are annexed hereto as Exhibit A.

ANSWER  Defendants admit that Forecast did show a Masterail work station at the 2005 and 2006 NAB show, but are without sufficient knowledge or information to form a belief as to whether the remaining averments of Paragraph 15 of the Complaint are true and correct and therefore deny same.


16.  The unique configuration of Forecast's Masterail workstations and the design and arrangement of its respective components serve as an indication to the relevant consuming public that the media workstation shown in Exhibit A is exclusively associated with a single source -- Forecast.  By virtue of its highly distinctive design, Forecast's Masterail workstation is uniquely recognizable to consumers of such goods as emanating from a single source - Forecast.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 16 of the Complaint are true and correct and therefore deny same.


17.  The distinctive trade dress of Forecast's Masterail workstations includes the following elements (hereinafter referred to as "The Masterail Trade Dress"):

> (a) The use of exposed, brushed, anodized aluminum extrusions having
> longitiduinally-extending T-slots for interconnecting moveable wood (or

7

composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

(b) The overall appearance of the assembled parts forming the Masterail workstations, including the low form factor of the Masterail workstations, the curved edges and distinctive shapes of the work surfaces, the location and angle of orientation of the moveable turrets (or console boxes) relative to the plane of the work surfaces, the size and shape of the cabinets below the work surfaces, the size, shape and appearance of the cabinet doors, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of brushed, anodized aluminum components (in addition to wood, composite and/or or steel) as an element of design;

(c) The size, shape, appearance and materials of the hardware used for interconnecting components of Masterail workstations, including the angled shelf mounting brackets, the anodized aluminum extrusions having integral, longitudinally-extending T-shaped slots formed therein for slideably engaging moveable members of the workstations (such as the work surfaces, turrets and articulating monitor arms), the removable cabinet doors, and the articulating monitor arms;

(d) The irregularly and distinctively-shaped appearance of the side panels (and the materials used for its fabrication) of the Masterail workstations;

(e) The arched feet of the Masterail workstations;

(f) The size, shape, configuration, appearance and materials of the workstation turrets, including their hinged, vented access panels and their ability to be laterally translated along the length of T-shaped slots formed in one of the anodized aluminum extrusions;

(g) The rearwardly curved shape, external appearance and materials of the rear brushed, anodized aluminum extrusion provided near the upper rear portion of the turrets, and the T-shaped slot provided in the brushed anodized aluminum extrusions for slideably engaging articulating display monitor arms;

(h) The shape of the individual bays of the workstations;

(i) The absence of lower cabinets in selected bays of the workstations;

(j) The shape, appearance, and materials used to fabricate the work surface of the workstations; and

(k) The shape, appearance, use of, and materials of the "pie-shaped" inserts used to fill gaps between adjacent bays in the workstations.

ANSWER  Defendants deny the averments of Paragraph 17.

**B. _Forecast's Soho SS-NLE Workstation_**

18.  In addition to its hugely popular Masterail modular workstations, Forecast also sells

media workstations under its Soho trademark. Like the Masterail workstations, Forecast's Soho

workstations are uniquely recognizable as products originating from Forecast by virtue of their

highly distinctive design.

ANSWER  Defendants admit that Forecast sells a workstation under the name Soho, but

Defendants deny the remainder of the averments in Paragraph 18.

19.  A photograph of Forecast's Soho SS-NLE "Rise and Shine" workstation is annexed

hereto as Exhibit B. The design of Forecast's Soho SS-NLE workstation incorporates distinctive

features of Forecast's "Masterail Trade Dress" to result in a workstation that is uniquely

identifiable as a product originating from Forecast.

ANSWER  Defendants admit that Exhibit B to the Complaint appears to be a Soho work

station, but are without sufficient knowledge or information to form a belief as to whether the

averments of Paragraph 19 of the Complaint are true and correct and therefore deny same.

20.  The distinctive trade dress of Forecast's Soho SS-NLE workstation also includes the

following elements (hereinafter referred to as the Soho SS-NLE Trade Dress"):

> (a) The use of exposed, brushed, anodized aluminum extrusions having
> longitiduinally-extending T-slots for interconnecting moveable wood (or
> composite) work surfaces and steel components, articulating and/or stationary
> display monitor support arms, and the like;

> (b) The overall appearance of the assembled parts forming the Soho SS-NLE
> desk, including the unique shape, color and finish of the work surface, the

location and angle of orientation of the turrets relative to the work surface, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of anodized aluminum components as an element of design;

(c) The distinctive shape of the articulating legs of the SS-NLE desk, including the presence of slots in the legs; and

(d) The size, shape, appearance and materials of the workstation turrets, including the anodized aluminum extrusion thereon.

ANSWER  Defendants deny the averments of Paragraph 20.

### C. Forecast's Raptor Media Workstations

21.  Forecast also sells a line of media workstations under its Raptor trademark. Forecast's Raptor workstations are uniquely recognizable as products of Forecast by virtue of their highly distinctive design.

ANSWER  Defendants admit that Forecast sells a media workstation under the name RAPTOR, but Defendants deny the remainder of the averments in Paragraph 21.

22.  A diagram of Forecast's Raptor workstation is annexed hereto as Exhibit C. The design of Forecast's Raptor workstation incorporates various features of Forecast's "Masterail Trade Dress" to result in a workstation that is uniquely identifiable as a product originating from Forecast.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 22 of the Complaint are true and correct and therefore deny same.

23.  The distinctive trade dress of Forecast's Raptor workstations also includes the following elements (hereinafter referred to as the "Raptor Trade Dress"):

(a) The overall appearance of the assembled parts forming the Raptor desk, including the unique concave shape of the work surface, the location and angle of orientation of the optional turrets relative to the work surface; and

(b) The arched legs and irregularly shaped shelf.

ANSWER  Defendants deny the averments of Paragraph 23.

## D. *The Forecast Side Table*

24.  Forecast also sells matching patented side tables to complement its Masterail, Soho and Raptor workstations. Like its other products, Forecast's patented side tables are uniquely recognizable as products of Forecast by virtue of their highly distinctive design.

ANSWER  Defendants admit that Forecast sells side tables, but Defendants deny the remainder of the averments in Paragraph 24.

25.  A diagram of Forecast's patented side table is annexed hereto as Exhibit D.  The design of Forecast's patented side table workstation incorporates various features of Forecast's "Masterail Trade Dress" to result in a side table that is uniquely identifiable as a product originating from Forecast.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 25 of the Complaint are true and correct and therefore deny same.

26.  The distinctive trade dress of Forecast's side table also includes the following elements (hereinafter referred to as the "Side Table Trade Dress"):

(a) The overall appearance of the side tables;

11

(b) The shape, materials and appearance of the top, bottom and side panels of the side tables that match the appearance of the work surface of the accompanying work station; and

(c) The shape, materials and appearance of the aluminum corner members of the side tables that match the appearance of the extrusions contained in the matching workstations.

ANSWER  Defendants deny the averments of Paragraph 26.


### E. Forecast's Utility and Design Patents

27.  Forecast has taken steps to protect the novel utilitarian and distinctive features of its innovative designs.

ANSWER  Defendants deny the averments of Paragraph 27.


28.  In addition to its rights in the distinctive trade dress of its media workstations and side tables, Forecast owns various United States patents relating to the utilitarian features and ornamental designs of its media workstations and side tables.

ANSWER  Defendants admit that Forecast claims ownership of various United States Patents, but Defendants deny the remainder of the averments in Paragraph 28.


29.  For instance, Forecast is and has been the owner of all right, title, and interest to, inter alia, U.S. Patent No. 6,857,712 ("the '712 patent") relating to the novel utilitarian aspects of its steel-framed, modular media workstations including its Masterail modular workstations.

ANSWER  Defendants admit that Forecast Consoles Inc. is listed as the Assignee on the face of U.S. Patent No. 6,857,712, but Defendants are without sufficient knowledge or information to form a belief as to whether the remainder of the averments in Paragraph 29 are true and correct and therefore deny same.

30. In fact, Defendants' willful infringement of Forecast's '712 patent is the subject of a pending lawsuit filed in this Court on March 10, 2005 and assigned Civil Action No. 2:05-CV-2756(KMW). In that action, Forecast alleges that Defendants' IntelliTrac media consoles infringe one or more claims of the '712 patent and that Defendants' use of the mark IntelliTrac infringes Forecast's rights in its Masterail trademark for the same goods. The lawsuit is currently stayed pending the outcome of a reexamination proceeding initiated by Forecast relating to the '712 patent.

ANSWER  Defendants admit that the alleged infringement of the '712 patent and alleged trademark infringement is the subject of a pending lawsuit filed on March 10, 2005 and assigned Civil Action No. 2:05-CV-2756(KMW).  This is a Declaratory Judgment Action filed by TBC Consoles Inc. in which the validity and alleged infringement of the '712 patent was placed at issue.  Defendants deny the remaining averments of Paragraph 30.

31. Forecast is also the owner of all right, title, and interest to U.S. Patent Nos. 6,986,556 ("the '556 patent) and 7,125,088 ("the '088 patent) relating to the novel utilitarian aspects of its steel-framed, modular media workstations including its Masterail modular workstations. A copy of the '556 patent is annexed hereto as Exhibit E. A copy of the '088 patent is annexed hereto as Exhibit F.

ANSWER  Defendants admit that Forecast Consoles Inc. is listed as the Assignee on the face of US Patent Nos. 6,986,556 and 7,125,088 as indicated in Exhibits E and F to the Complaint, but Defendants are without sufficient knowledge or information to form a belief as to whether the remainder of the averments in Paragraph 31 are true and correct and therefore deny same.

6183877.2                                    13

32. The '088 patent issued on October 24, 2006 for an invention entitled "MULTIMEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM" and lists William G. Haberman as the sole inventor. All right, title and interest in the '088 patent has been assigned to Forecast by virtue of an assignment that has been duly recorded at the United States Patent and Trademark Office.

ANSWER  Defendants admit that the '088 patent issued on October 24, 2006 is entitled "Multimedia Workstation Having a Master Rail System" and that William G. Haberman is listed as the sole inventor, but deny that William G. Haberman is the sole inventor and are without sufficient knowledge or information to form a basis as to whether the remaining averments of Paragraph 32 are true and correct and therefore deny same.

33. The '088 patent is a continuation of Application Serial No. 11/005,064, filed on December 6, 2004, which is a division of Application Serial No. 10/407,436, filed on April 4, 2003, which is now U.S. Patent No. 6,857,712.

ANSWER  Defendants admit the averments contained in Paragraph 33.

34. The '088 patent is directed to, for example, a multi-media workstation having, *inter alia*, a master rail system for permitting horizontal adjustment of the various components of the workstation.

ANSWER  Defendants deny the averments in Paragraph 34.

35. The technology covered by the '088 patent has been widely commercialized by Forecast to produce multi-media workstations having various components capable of horizontal adjustment.

ANSWER  Defendants are without sufficient knowledge or information to form a belief as to whether the averments of Paragraph 35 of the Complaint are true and correct and therefore deny same.

36. As described below, on information and belief, TBC has utilized the invention claimed in the '088 patent by engaging in the manufacture and sale of its IntelliTrac multimedia workstations, and/or parts therefor, that directly and/or contributorily infringe one or more claims of the '088 patent.

ANSWER  Defendants deny the averments of Paragraph 36.

37. In addition to the above-described utility patents, Forecast is and has been the owner of all right, title, and interest to two design patents, namely U.S. Patent No. D473,078, for the ornamental appearance of a desk ("the '078 patent"), and U.S. Patent No. D495,902, for the ornamental appearance of a desk side table ("the '902 patent"). A copy of the '078 patent is annexed hereto as Exhibit G. A copy of the '902 patent is annexed hereto as Exhibit H.

ANSWER  Defendants admit that Forecast Consoles Inc. is listed as the Assignee on the face of U.S. Patent Nos. D473,078 and D495,902, but Defendants deny the remainder of the averments in Paragraph 37.

## GENERAL ALLEGATIONS-DEFENDANTS' INFRINGING ACTIVITIES

38.  On information and belief, Defendants TBC Consoles, Inc. and Time Base Corporation (collectively "TBC') were formed by former Forecast employee Defendant Jerry Hahn.

ANSWER  Defendants admit the averments in Paragraph 38.


39.  On information and belief, Jerry Hahn formed TBC for the purpose of selling knock-offs of Forecast's products.

ANSWER  Defendants deny the averments of Paragraph 39.


40.  TBC is engaged in the same business as Forecast, the manufacture and sale of media workstations. In connection with its business activities, TBC competes for the same customers as Forecast.

ANSWER  Defendants admit the averments in Paragraph 40.


41.  TBC's product line closely parallels Forecast's product line. For each previously-existing Forecast workstation, TBC has introduced a competing, knock-off workstation that TBC markets to the same customers and potential customers as Forecast.

ANSWER  Defendants deny the averments of Paragraph 41.


42.  TBC's manufacture, sale and offer for sale of knock-off products has resulted in widespread consumer confusion.

ANSWER  Defendants deny the averments of Paragraph 42.

43. In fact, over the years, TBC's appropriation of Forecast's product designs has grown increasingly frequent and increasingly blatant. As a result, TBC's product line has grown increasingly similar to Forecast's product line.

ANSWER    Defendants deny the averments of Paragraph 43.

**F. *TBC's IntelliTrac Media Workstations***

44. For instance, after seeing Forecast's Masterail modular workstation displayed by Forecast at the 2005 NAB convention in Las Vegas, TBC set out to produce a knock-off of the Masterail workstation.

ANSWER    Defendants deny the averments of Paragraph 44.

45. Consequently, in 2005, TBC began to manufacture, sell and offer for sale a knockoff of Forecast's Masterail modular workstations under the confusingly similar trademark IntelliTrac. A photograph of TBC's IntelliTrac workstation is annexed hereto as Exhibit I.

ANSWER    Defendants deny the averments of Paragraph 45.

46. TBC's IntelliTrac workstation appropriates Forecast's Masterail Trade Dress in that it shares, *inter alia*, the following similarities:

    (a) The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

    (b) The overall appearance of the assembled parts forming the IntelliTrac workstations, including the low form factor of the IntelliTrac workstations, the curved edges and distinctive shapes of the work surfaces, the location and angle of orientation of the moveable turrets (or console boxes) relative to the plane of the work surfaces, the size and shape of the cabinets below the work surfaces, the size, shape and appearance of the cabinet doors, the use of

articulating monitor arms extending forward from a rear portion of the turrets, and the use of brushed, anodized aluminum components (in addition to wood, composite and/or or steel) as an element of design;

(c) The size, shape, appearance and materials of the hardware used for interconnecting components of the IntelliTrac workstations, including the angled shelf mounting brackets, the anodized aluminum extrusions having integral, longitudinally-extending T-shaped slots formed therein for slideably engaging moveable members of the workstations (such as the work surfaces, turrets and articulating monitor arms), the removable cabinet doors, and the articulating monitor arms;

(d) The irregularly and distinctively-shaped appearance of the side panels (and the materials used for its fabrication) of the IntelliTrac workstations;

(e) The arched feet of the IntelliTrac workstations;

(f) The size, shape, configuration, appearance and materials of the workstation turrets, including their hinged, vented access panels and their ability to be laterally translated along the length of T-shaped slots formed in one of the anodized aluminum extrusions;

(g) The rearwardly curved shape, external appearance and materials of the rear brushed, anodized aluminum extrusion provided near the upper rear portion of the turrets, and the T-shaped slot provided in the brushed anodized aluminum extrusions for slideably engaging articulating display monitor arms;

(h) The shape of the individual bays of the workstations;

(i) The absence of lower cabinets in selected bays of the workstations;

(j) The shape, appearance, and materials used to fabricate the work surface of the workstations; and

(k) The shape, appearance, use of, and materials of the "pie-shaped" inserts used to fill gaps between adjacent bays in the workstations.

ANSWER  Defendants deny the averments of Paragraph 46.

## G. *TBC's SmartTrac Media Workstations*

47.  TBC also offers for sale a knock-off of Forecast's Soho SS-NLE editing desk under the name SmartTrac. A photograph of TBC's SmartTrac workstation is annexed hereto as Exhibit J.

ANSWER  Defendants deny the averments of Paragraph 47 except admit that Exhibit J to the Complaint is a photograph of TBC's SmartTrac work station.

48.  TBC's SmartTrac workstation appropriates Forecast's "Soho SNLE Trade Dress" in that it shares, *inter alia,* the following similarities:

    (a) The use of exposed, brushed, anodized aluminum extrusions having longitiduinally-extending T-slots for interconnecting moveable wood (or composite) work surfaces and steel components, articulating and/or stationary display monitor support arms, and the like;

    (b) The overall appearance of the assembled parts forming the SmartTrac desk, including the unique shape, color and finish of the work surface, the location and angle of orientation of the turrets relative to the work surface, the use of articulating monitor arms extending forward from a rear portion of the turrets, and the use of anodized aluminum components as an element of design;

    (c) The distinctive shape of the articulating legs of the SmartTrac desk, including the presence of slots in the legs; and

    (d) The size, shape, appearance and materials of the workstation turrets, including the anodized aluminum extrusion thereon.

ANSWER  Defendants deny the averments of Paragraph 48.

## H. *TBC's Crossfire Desks*

49.  TBC also offers for sale a knock-off of Forecast's Raptor workstations under the name Crossfire. A photograph of TBC's Crossfire workstation is annexed hereto as Exhibit K.

ANSWER  Defendants deny the averments of Paragraph 49 except admit that Exhibit K to the Complaint is a photograph of TBC's Crossfire workstation.

50.  TBC's Crossfire workstations appropriate Forecast's "Raptor Trade Dress" in that they share, *inter alia,* the following similarities:

(a) The overall appearance of the assembled parts forming the Raptor desk, including the unique concave shape of the work surface, the location and angle of orientation of the optional turrets relative to the work surface; and

(b) The arched legs and irregularly shaped shelf.

ANSWER  Defendants deny the averments of Paragraph 50.

### I. *TBC'S Infringing Side Tables*

51.  TBC also offers for sale knock-offs of Forecast's patented Side Tables. A photograph of TBC's infringing Side Table is annexed hereto as Exhibit L.

ANSWER  Defendants deny the averments of Paragraph 51 except admit that Exhibit L is a photograph of a TBC side table.

52.  TBC's infringing Side Tables appropriate Forecast's "Side Table Trade Dress" in that it shares, *inter alia,* the following similarities:

(a) The overall appearance of the side tables;

(b) The shape, materials and appearance of the top, bottom and side panels of the side tables that match the appearance of the work surface of the accompanying work station; and

(c) The shape, materials and appearance of the aluminum corner members of the side tables that match the appearance of the extrusions contained in the matching workstations.

ANSWER  Defendants deny the averments of Paragraph 52.

53.  Accordingly, on information and belief, Defendants' IntelliTrac, SmartTrac and, Crossfire workstations and desk side tables infringe Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress, respectively.

ANSWER  Defendants deny the averments of Paragraph 53.

6183877.2

54. Defendants manufacture their infringing products in the United States, and promote, offer to sell, and sell the infringing products in competition with Forecast. On information and belief, Defendants intentionally designed their infringing products to look like Forecast's competing media workstations.

ANSWER  Defendants admit that they sell products in the United States in competition with Forecast, but Defendants deny the remainder of the averments in Paragraph 54.

55. The public is likely to be harmed by Defendants' actions, as customers will be confused or deceived into purchasing Defendants' workstations thinking they are Forecast's workstations or that they are made by or approved, sponsored or endorsed by Forecast, or in some other way connected to Forecast or Forecast's products – when, in fact, they are infringing patents the purchase of which can result in a lawsuit against the consumer.

ANSWER  Defendants deny the averments of Paragraph 55.

56. Upon information and belief, Defendants willfully appropriated Forecast's patented designs and the Masterail Trade Dress, the Soho SS-NLE Trade Dress, the Raptor Trade Dress and the Side Table Trade Dress with knowledge of Forecast's exclusive rights therein.

ANSWER  Defendants deny the averments of Paragraph 56.

57. By their actions, Defendants are harming Forecast, its reputation and its goodwill irreparably and, unless permanently enjoined, will continue to do so. Forecast has no adequate remedy at law.

ANSWER  Defendants deny the averments of Paragraph 57.

## FIRST CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. 7,125,088

58. Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1 through 57 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in Paragraphs 1-57 set forth above.

59. Defendants have made, used, sold and/or offered to sell and/or advertised, and will continue to make, use, sell and/or offer to sell and/or advertise, media workstations, including their IntelliTrac workstations, and/or parts therefor, that directly and/or contributorily infringe each of the elements of one or more claims of the '088 patent, without license from Forecast, in this Judicial District and elsewhere throughout the United States.

ANSWER  Defendants deny the averments of Paragraph 59.

60. By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have directly and/or contributorily infringed, and will continue to directly and/or contributorily infringe, one or more claims of the '088 patent under 35 U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 60.

61. By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have induced infringement of, and will continue to induce infringement of, one or more claims of the '088 patent under 35 U.S.C. §271 (b), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 61.

62.  On information and belief, Defendants' infringement of the '088 patent has been and continues to be willful and deliberate, making this an exceptional case.

ANSWER  Defendants deny the averments of Paragraph 62.

63.  As a direct and proximate consequence of the acts and practices of Defendants, Forecast has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured, in its business and property rights, and has suffered, is suffering, and will continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

ANSWER  Defendants deny the averments of Paragraph 63.

64.  As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Forecast, for which there is no adequate remedy at law, and for which Forecast is entitled to injunctive relief under 35 U.S.C. §283.

ANSWER  Defendants deny the averments of Paragraph 64.

## SECOND CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. D473,078

65.  Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1 through 64 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averment as set forth in Paragraphs 1-64 set forth above.

66. Defendants have made, used, sold and/or offered to sell and/or advertised, and will continue to make, use, sell and/or offer to sell and/or advertise, media workstations, including their Crossfire workstations, and/or parts therefor, that directly and/or contributorily infringe the '078 patent, without license from Forecast, in this Judicial District and elsewhere throughout the United States.

ANSWER  Defendants deny the averments of Paragraph 66.


67. By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have directly and/or contributorily infringed, and will continue to directly and/or contributorily infringe, the '078 patent under 35 U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 67.


68. By making, using, selling, and/or offering for sale and/or advertising their infringing media workstations and/or parts therefor, Defendants have induced infringement of, and will continue to induce infringement of, the '078 patent under 35 U.S.C. §271 (b), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 68.

69. On information and belief, Defendants' infringement of the '078 patent has been and continues to be willful and deliberate, making this an exceptional case.

ANSWER  Defendants deny the averments of Paragraph 69.


70. As a direct and proximate consequence of the acts and practices of Defendants, Forecast has been, is being, and, unless such acts and practices are enjoined by the Court, will

continue to be injured, in its business and property rights, and has suffered, is suffering, and will

continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

ANSWER  Defendants deny the averments of Paragraph 70.


71.  As a direct and proximate consequence of the acts and practices of Defendants,

Defendants have also caused, are causing and, unless such acts and practices are enjoined by the

Court, will continue to cause irreparable harm to Forecast, for which there is no adequate remedy

at law, and for which Forecast is entitled to injunctive relief under 35 U.S.C. §283.

ANSWER  Defendants deny the averments of Paragraph 71.


## THIRD CLAIM FOR RELIEF – INFRINGEMENT OF U.S. PATENT NO. D495,902

72.  Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1

through 71 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averment as set forth in

Paragraphs 1-61 set forth above.


73.  Defendants have made, used, sold and/or offered to sell and/or advertised, and will

continue to make, use, sell and/or offer to sell and/or advertise, desk side tables and/or parts

therefor, that directly and/or contributorily infringe the '902 patent, without license from

Forecast, in this Judicial District and elsewhere throughout the United States.

ANSWER  Defendants deny the averments of Paragraph 73.


74.  By making, using, selling, and/or offering for sale and/or advertising their infringing

desk side tables and/or parts therefor, Defendants have directly and/or contributorily infringed,

and will continue to directly and/or contributorily infringe, the '902 patent under 35 U.S.C. §271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 74.


75.  By making, using, selling, and/or offering for sale and/or advertising their infringing desk side tables and/or parts therefor, Defendants have induced infringement of, and will continue to induce infringement of, the '902 patent under 35 U.S.C. §271 (b), and/or (f), literally and/or under the doctrine of equivalents.

ANSWER  Defendants deny the averments of Paragraph 75.


76.  On information and belief, Defendants' infringement of the '902 patent has been and continues to be willful and deliberate, making this an exceptional case.

ANSWER  Defendants deny the averments of Paragraph 76.


77.  As a direct and proximate consequence of the acts and practices of Defendants, Forecast has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured, in its business and property rights, and has suffered, is suffering, and will continue to suffer, injury and damages for which it is entitled to relief under 35 U.S.C. §284.

ANSWER  Defendants deny the averments of Paragraph 77.


78.  As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Forecast, for which there is no adequate remedy at law, and for which Forecast is entitled to injunctive relief under 35 U.S.C. §283.

ANSWER  Defendants deny the averments of Paragraph 78.

## FOURTH CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a))

79.  Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1
through 78 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in
Paragraphs 1-78 set forth above.

80.  Defendants' appropriation and/or simulation of indicia associated with Forecast,
including but not limited to the Masterail Trade Dress, the Soho SS-NLE Trade Dress, the
Raptor Trade Dress, and the Side Table Trade Dress, together or individually, constitutes false
designation of origin and false representation with respect to Defendants' goods. Defendants'
actions are likely to cause confusion, mistake, or deception as to the source or sponsorship of
Defendants' goods or as to a connection between the parties.

ANSWER  Defendants deny the averments of Paragraph 80.

81.  Defendants' actions constitute unfair competition, in violation of Section 43(a) of the
Lanham Act, 15 U.S.C. § 1125(a).

ANSWER  Defendants deny the averments of Paragraph 81.

## FIFTH CLAIM FOR RELIEF
## FEDERAL TRADEMARK DILUTION (15 U.S.C. §43(c))

82.  Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1
through 81 above, inclusive, and incorporates the same by reference herein.

6183877.2

27

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in Paragraphs 1-81 set forth above.


83.  Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress are each famous, distinctive and well known in the United States in connection with media workstations.

ANSWER  Defendants deny the averments of Paragraph 83.


84.  Defendants' adoption of Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress commenced long after Forecast's respective trade dresses had become famous.

ANSWER  Defendants deny the averments of Paragraph 84.


85.  Defendants' adoption and use of Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress for its media workstations is diluting and is likely to continue to dilute Forecast 's trade dresses in violation of 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

ANSWER  Defendants deny the averments of Paragraph 85.


86.  Defendants willfully intended to dilute the distinctive quality of Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress.

ANSWER  Defendants deny the averments of Paragraph 86.

## SIXTH CLAIM FOR RELIEF - TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

87. Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1 through 87 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in Paragraphs 1-86 set forth above.

88. Defendants have copied the trade dress of Forecast's products with full knowledge of Forecast's prior rights therein and of the reputation and success of Forecast's products sold under and bearing the Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress. Defendants' imitation of the trade dress of Forecast's products is for the willful and calculated purpose of misappropriating and trading on Forecast's goodwill and business reputation. Furthermore, Defendants have used imitations of Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress for the willful and calculated purpose of causing confusion and mistake among the public and the trade and of deceiving the public and trade as to the nature and origin of Defendants' products, in violation of Forecast's rights under the common law of the State of New York.

ANSWER  Defendants deny the averments of Paragraph 88.

89. Defendants' conduct constitutes common law trademark infringement and unfair competition under the laws of the State of New York.

ANSWER  Defendants deny the averments of Paragraph 89.

## SEVENTH CLAIM FOR RELIEF
## DILUTION UNDER NEW YORK LAW (N.Y. Gen. Bus. Law § 360-l)

90. Forecast repeats and re-alleges each and every allegation set forth in paragraphs 1 through 89 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in Paragraphs 1-89 set forth above.

91. Defendants' unauthorized adoption of Forecast's Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress is diluting and is likely to continue diluting Forecast's famous and distinctive Masterail Trade Dress, Soho SS-NLE Trade Dress, Raptor Trade Dress and Side Table Trade Dress and is likely to injure and has injured Forecast's business reputation. Any deficiencies in or complaints about Defendantss products will harm Forecast.

ANSWER  Defendants deny the averments of Paragraph 91.

92. Defendants' conduct constitutes a violation of Section 360-l of the General Business Law of the State of New York.

ANSWER  Defendants deny the averments of Paragraph 92.

## EIGHTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES UNDER NEW YORK STATE LAW
## (N.Y. Gen. Bus. Law § 349)

93. Forecast repeats and re-alleges each and every averment set forth in paragraphs 1 through 92 above, inclusive, and incorporates the same by reference herein.

ANSWER  Defendants repeat their answers to Plaintiff's averments as set forth in Paragraphs 1-92 set forth above.

94.  By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

ANSWER  Defendants deny the averments of Paragraph 94.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Defendants have presented prior art to Forecast which shows that some or all of the disclosures in the Forecast Patents (7,125,088, D743,078, D495,902) were known in the art at least one year prior to the grant of the Forecast Patents.  The Forecast Patents are invalid as a result of a statutory bar under 35 U.S.C. § 102(b) and as such may not be enforced against Defendants.

## SECOND AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of patent infringement upon which relief may be granted because the Forecast Patents are invalid.

## THIRD AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of Federal Unfair Competition under Section 43(a) of the Lanham Act upon which relief may be granted.

6183877.2

## FOURTH AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of State and Common Law Trademark Infringement and Competition upon which relief may be granted.

## FIFTH AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of Federal Trademark Dilution upon which relief may be granted.

## SIXTH AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of State Trademark Dilution upon which relief may be granted.

## SEVENTH AFFIRMATIVE DEFENSE

Forecast has failed to state a claim of State Deceptive Trade Practices upon which relief may be granted.

## COUNTERCLAIM

Defendants complain of Forecast and allege as follows:

95.    Defendant/Counterclaim Plaintiff Time Base Corporation is a corporation duly organized and existing under the laws of the state of New York and with its principal place of business at 170 Rodeo Drive, Edgewood, New York 11717.  Time Base Corporation does business as TBC Consoles, Inc.

96.    Defendant/Counterclaim Plaintiff Jerry Hahn is an individual, a resident of the state of New York and a co-owner of Defendants/Counterclaim Plaintiffs TBC Consoles, Inc. and Time Base Corporation.

6183877.2

## JURISDICTION AND VENUE

97.     The following counterclaims arise under the Patent Statue, Title 35 U.S.C. § 1 *et. seq*. This Court has personal jurisdiction over Plaintiff under NY CPLR §§ 301 and 302 because Plaintiff resides in and transacts business in this state and the events giving rise to this Counterclaim occurred in this state and/or had effects in this state. Venue is proper in this District pursuant to Title 28 U.S.C. §§ 1391(b)(c) and 1400(b) because plaintiff regularly does business and is subject to personal jurisdiction here.

## COUNT I
## JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT

98.     Defendants incorporate by reference all the preceding paragraphs as if fully set forth herein.

99.     Defendants allege, on information and belief, that U.S. Patent Nos. 7,125,088, D743,078 and D495,902 ("Forecast Patents") are invalid, unenforceable and void for one or more of the following reasons:

        (a)     Defendants have not infringed any claim of the Forecast Patents;

        (b)     The patentee did not invent the subject matter patented, nor did he make any invention or discovery, either novel, original or otherwise, within the meaning of United States Code, Title 35;

        (c)     The alleged invention was made by another person in this country before the patentee's alleged invention, and such other person had not abandoned, suppressed, or concealed it;

        (d)     The claims, and each of them, of the patent are excessively vague and indefinite and do not distinctly point out and define the invention;

(e)    In light of the prior art at the time the alleged invention was made, the subject matter as claimed in the patent would have been obvious to a person skilled in the art to which the alleged invention relates and does not constitute a patentable invention;

(f)    More than one year prior to the filing of the original patent application which matured into the patents in suit, the alleged invention was patented or described in printed publications in this or in foreign countries, or was in public use or on sale in this country;

(g)    Before the alleged invention or discovery by the patentee, the alleged invention was known or used by others and was on sale in this country and was patented or described in printed publication in this or in foreign countries;

(h)    If there is any invention in the subject matter of the patents in suit, which is denied, the patents nevertheless were not obtained in a manner consistent with the provisions of Title 35 of the United States Code; and

(i)    Forecast with full knowledge of the activities of Defendants has failed to assert its patents for a period since the issue of the Forecast Patents while Defendants invested time and money in building its business and goodwill, and Forecast is guilty of laches and cannot maintain any cause of action against Defendants under the Forecast Patents.

## **PRAYER FOR RELIEF**

Wherefore, Defendants respectfully request that this Honorable Court enter a judgment that:

A.    The Forecast Patents are invalid and unenforceable;

B.    Defendants have not infringed any of the claims of the Forecast Patents;

C.    Defendants have not engaged in any acts of trademark infringement, trademark

dilution, unfair competition or deceptive trade practices as alleged in Forecast's Fourth through

Eighth Claims for Relief; and

D.    Grants any such other relief as this Court seems necessary, just, fair and

reasonable.

Respectfully Submitted,

Dated: May 29, 2007

Keith D. Nowak
Bar Roll No. KN-0230
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
(212) 238-8610 Phone
Attorney for Defendants

6183877.2                                          35

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM (JURY TRIAL DEMANDED) was served by e-mail and first class mail this 29th day of May, 2007 to:

> Bruce D. Katz
> Bruce D. Katz and Associates
> 225 Broadway, 37th Floor
> New York, NY 10007
> E-mail: bkatz225@gmail.com

Date: <u>May 29, 2007</u>

_____
Keith D. Nowak