Bruce D. Katz, Esq. (BK-2041)
Bruce D. Katz & Associates
225 Broadway – 37th Fl.
New York, NY 10007
(212)233-3434

*Attorneys for Plaintiff*
Forecast Consoles, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FORECAST CONSOLES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TBC CONSOLES, INC., TIME BASE CORPORATION and JERRY HAHN,<br><br>Defendants. | ECF CASE<br><br>CIVIL ACTION NO.<br>07-CV-3106(KMW) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 AS TO DEFENDANTS' PROPOSED MOTOIN FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGMENT OF PLAINTIFF'S DESIGN PATENTS**

**PRELIMINARY STATEMENT**

Plaintiff hereby responds to Defendants' Statement Pursuant to Local Rule 56.1 of allegedly Uncontested Facts asserting that they have not infringed Plaintiff's U.S. Design Patent Nos. D473,078 S ("the '078 patent") and D495,902 S ("the '902 patent").

Although Defendants' statement contains a variety of factual statements, it also contains legal statements in violation of Local Rule 56.1. To the extent Defendants have set forth statements of law, such statements are erroneous.

Plaintiff hereby responds to the statements contained in Defendant's Rule 56.1 Statement.

1. Plaintiffs U.S. Design Patent '078 (Exhibit 1) is directed to the ornamental design for a multimedia console desk, or table.

Response: Contested. Plaintiff admits that its U.S. Design Patent '078 is directed to the ornamental appearance of a desk. (Defendants' Exhibit 1).

2. The claimed portion of the design is directed, in part, to a lower horizontal work surface comprising an elongated panel being generally rectangular in shape with one inner, generally straight long side, two generally straight short sides of equal length and one outer, generally concave, articulate side which curves in a continuous circular arc from the outer edge of one side of equal length to the outer edge of the other side of equal length of the panel. (Exhibit 1, Figs. 1-3). The outer comer of each side is snubbed or rounded in the horizontal plane.

Response: Contested. Plaintiff denies that a lower horizontal work surface of the design claimed in its '078 patent is generally rectangular in shape. The work surface is not rectangular in shape and has only one generally straight side. Plaintiff also denies that the two short sides are generally straight. Each has a matching curvature and tapers into the curved front surface of the work surface. (Defendants' Exhibit 1, Figs. 1-3).

3. Console supporting legs are provided on each side of the work surface. (Defendants' Exhibit 1, Figs. 1, 2, 5).

Response: Uncontested. Plaintiff admits that legs are provided proximate opposing sides of the lower surface of the work surface. (Defendants' Exhibit 1, Figs. 1, 2, 5).

4. An arched strut, or foot, extends from each leg to engage the floor or any other supporting surface to provide stability. (Exhibit 1, Figs. 1, 2, 5).

Response: Uncontested. Plaintiff admits that an arched foot extends from each leg to engage the floor or any other supporting surface to provide stability. (Defendants' Exhibit 1, Figs. 1, 2, 5).

5. The '078 design (Exhibit 1) includes a distinctive octagonal (in cross section) rail member which extends along the straight long, inner edge of the horizontal work surface, and projects perpendicularly, outwardly from the side of the overall desk as a dominant feature. (Exhibit 1, Figs. 1, 2, 4, 5).

Response: Contested. Plaintiff admits that the design shown and illustrated in the '078 patent includes an octagonal rail member that extends beneath the straight long inner edge of the horizontal work surface and projects outwardly from the side of the desk. Plaintiff denies that the octagonal rail member is a dominant feature of the design claimed in the '078 patent. (Defendants' Exhibit 1, Figs. 1, 2, 4, 5).

6. Forecast alleges the following similarities between its '078 design and the defendants' CROSSFIRE (Exhibits 3,4 and 5):

a. Overall appearance of assembled parts

b. Unique concave shape of the work surface

c. Location and angle of orientation of Turrets (not shown in design patent '078)

d. Arched legs. (Complaint, p. 14, paragraph 50).

Response: Contested. Plaintiff admits that it has alleged similarities denoted above as (a) - (d) between its Raptor workstation and Defendants' Crossfire workstations. However, pg. 14, ¶50 of Plaintiff's Complaint relates to similarities between the trade dress.

7. The TBC CROSSFIRE desks (Exhibits 3, 4 and 5) have a work surface which is generally "kidney shaped." (Exhibit 5). It has a first inner long, straight edge and two short, curved sides of equal length. The other long side is generally arcuate and inwardly concave. The two ends are arcuate and convex, and converge along their length as they extend outwardly from the console. *(Id.)*

Response: Contested. Plaintiff admits that TBC's Crossfire desks have a work surface that has a long, straight edge, two short, curved sides, and a long side that is arcuate and inwardly concave like that shown in the '078 patent. Plaintiff denies that the work surface of TBC's Crossfire desks is generally "kidney shaped." (Defendants' Exhibits 3, 4, 5).

8. Two supporting legs are provided in a criss-cross arrangement on each side of the horizontal work surface with each leg extending generally arcuately and downwardly so as to cross the other to present an "X" overall design, which is a signature feature of the TBC CROSSFIRE console.

Response: Contested. Plaintiff admits that TBC's Crossfire desk has a first, arched leg similar in appearance to the arched leg shown in its '078 design patent. Plaintiff admits that TBC's Crossfire desk has a second straight leg arranged to cross the first leg. Plaintiff denies the remaining portions of this statement, and particularly denies that an "X" overall design is a 'signature" feature of TBC's Crossfire console. (Defendant's Exhibits 3, 4, 5).

9. There is no rail protruding from the side of the CROSSFIRE which is a dominant feature of the '078 design. (Exhibits 3, 4).

Response: Contested. Plaintiff admits that there is no rail protruding from the side of TBCs' Crossfire desk, but deny that this is a dominant feature of the '078 design. (Defendants' Exhibits 3, 4).

10. As in any patent infringement determination, the first step is to analyze the claim being asserted to interpret its meaning and scope. According to Forecast, the novel elements of its patented design are: (1) the concave work surface (only the lower surface - the top surface is disclaimed); (2) the arched legs and (3) angled turrets (not shown - and thus not part of the patented design). (Please see paragraph 6, supra.)

Response: Contested. Plaintiff notes that the foregoing statement is not factual in nature. It is an incorrect legal statement of the test for design patent infringement, which necessitates a determination of the point(s) of novelty of a patent design, comparison of these points of novelty with the accused design, and a consideration of the overall similarity of the patented and accused designs. Plaintiff admits that elements numbered above as (1) - (3) are distinctive aspects of its design and were identified in Plaintiff's Complaint as elements of Plaintiff's trade dress. Neither Plaintiff nor Defendant has conclusively established these elements of the design to its points of novelty. The determination of the points of novelty of a patented design requires a consideration of the prior art. Defendants have made no effort to analyze or determine the point(s) of novelty of the '078 patent.

11. Plaintiff does not mention the dominant feature of an octagonal rail (in cross section) projecting from each side of its console design (Ex. 1).

Response: Contested. Plaintiff denies that the octagonal rail is a dominant feature of the design of the '078 patent. Indeed, this feature of the design is not readily viewable during use of the desk. (Defendants' Exhibit 1).

12. To determine infringement the trier of fact (here the Judge) applies two factual tests. The first is the so-called "ordinary observer test" which may be a consumer or the trier of fact. This test is whether an "ordinary purchaser" would be confused into buying TBC's product, thinking that it was a Forecast product based upon the overall appearance of the '078 and design and the CROSSFIRE.

Response: Contested. The statement contained in Paragraph 12 is non-factual. It is an erroneous statement of law in violation of LR 56.1 and need not be responded to. Nonetheless, Plaintiff notes that the determination of confusion is performed from the standpoint of the ordinary purchaser of the patented design.

13. Only if the test of paragraph 12, above, is met, does the Court then conduct the second test as to whether TBC misappropriated the novel aspects of the Forecast '078 design and whether it was TBC's use of these novel features that directly caused, a sin qua non, the likelihood of confusion.

Response: Contested. The statement contained in Paragraph 13 is non-factual. It is an erroneous statement of law in violation of LR 56.1 and need not be responded to. Nonetheless, Plaintiff notes that the "points of novelty" test determines whether the point of novelty of the patent design have been appropriated by the accused design.

14. The alleged novel aspects of Forecast's design patent (Exhibit 1) appear to be the concaved outer long edge of the work surface with the generally straight outwardly expanding side edges as they extend along their length from the console; a single, arched leg on either side of the console with a single, generally horizontal, arcuate foot, or strut, extending from the bottom of each leg to stabilize the leg; and an octagonal (in cross section) rail projecting from each side of the console. (Exhibit 1, Figs. 1-5).

Response: Contested. Plaintiff has not yet determined the points of novelty of the design disclosed and claimed in the '078 patent and has merely alleged the distinctive features of the design. This determination of the points of novelty of the '078 patent requires an assessment of the prior art.

15. As a factual example of what the US Court of Appeals for the Federal Circuit found to be a non-infringing "overall appearance of an accused product (a toy rocket football), please see *Oddzon Products, Inc. v Just Toys Inc., et al.,* 122 F.3d 1396, 1399, 1400, 1404-1406 (Fed. Cir. 1997).

Patented Design No. 346,001:




Non-Infringing Accused Products:



Response: Contested. The statement contained in Paragraph 15 is non-factual. It is an erroneous statement of law in violation of LR 56.1 and need not be responded to.

Nonetheless, Plaintiff notes that the district court's determination of non-infringement in the *Oddzon Prods.* case, upheld by the Federal Circuit, was largely based upon the plaintiff's failure to introduce evidence sufficient to demonstrate that the similarities between the patent design and the accused products were due to protectable ornamental features of the designs. Contrary to Defendant's statement, the Court did indeed find similarity in the overall designs.

16. In the above comparison, even though the footballs were identical and the rear fin of the patented toy rocket football design had longitudinal edges which diverged and expanded in width so as to flare outwardly from the fin's root to its distal end, the edges were somewhat concave along their length, as opposed to the accused designs, which had fin edges, which were either rippled, or wavy along the length of the fin or simply straight.

Response: Contested. The statement contained in Paragraph 16 is non-factual. It is an erroneous statement of law in violation of LR 56.1 and need not be responded to. Nonetheless, Plaintiff notes that the district court's determination of non-infringement in the *Oddzon Prods.* case, upheld by the Federal Circuit, was largely based upon the plaintiff's failure to introduce evidence sufficient to demonstrate that the similarities between the patent design and the accused products were due to protectable ornamental features of the designs. Contrary to Defendant's statement, the Court did indeed find similarity in the overall designs.

17. This difference was sufficient for the Court in *Oddzon Products* to find that the "overall appearance" of the product design (as opposed to the functional features) would not confuse a consumer and thus there was no need to conduct the next step of comparing the novel design features in the patent with the allegedly infringing product.

Response: Contested. The statement contained in Paragraph 16 is non-factual. It is an erroneous statement of law in violation of LR 56.1 and need not be responded to.

Nonetheless, Plaintiff notes that the district court's determination of non-infringement in the *Oddzon Prods.* case, upheld by the Federal Circuit, was largely based upon the plaintiff's failure to introduce evidence sufficient to demonstrate that the similarities between the patent design and the accused products were due to protectable ornamental features of the designs. Contrary to Defendant's statement, the Court did indeed find similarity in the overall designs.

18. Quite clearly, the differences between both the overall design appearance, and the individual design features of the TBC CROSSFIRE console (Exhibits 3,4 and 5) as compared with those of the '078 patented Forecast design (Exhibit 1) are so numerous and substantial that no "ordinary observer" would likely be confused into buying TBC's CROSSFIRE thinking it was a Forecast product based on the '078 design.

Response: Contested. It is Plaintiff's position that the similarities between the overall design appearance, and the individual design features of TBC's Crossfire workstation and the design of the '078 patent are so numerous and substantial that an "ordinary observer" would likely be confused into buying TBC's Crossfire desk thinking it was a Forecast product.

19. The Forecast '902 design patent (Exhibit 2) for a side table (Complaint Exhibit H) is a relatively simple design of a generally cubic shaped table having vertically straight (yet, slightly arcuate in the horizontal plane) vertical side walls joining top and bottom horizontal surfaces, each of which extend beyond the vertical side walls.

Response: Contested. The '902 patent discloses and claims a desk side table with end panels having curved sides.

20. The side walls of the '902 design are wholly within the perimeters of the horizontal surfaces and have four vertically straight edges which generally form the overall design of a cube.

Response: Contested. The side walls have a curved profile.

21. Vertically extending molding is attached to the vertical edges of each side; i.e., along each vertical comer of the overall cube.

Response: Contested. Molding having a curved profile is attached near the edges of each side.

22. The TBC side table (Exhibit 6) is a generally rectangular prism (as opposed to a cube). The table has two vertical side panels which are arcuate along the vertical edge.

Response: Contested. The TBC side table is virtually identical to that shown in the ‘902 patent.

23. The side panels are mounted wholly on the outside of two generally horizontal surfaces and extend above the upper horizontal surface to present a horizontally extending, arcuate edge.

Response: Contested. The TBC side table is virtually identical to that shown in the ‘902 patent.

24. Although the wheeled legs of the Forecast design are not part of the patent claim, the arcuate struts supporting the TBC wheels are completely different from any aspect of the Forecast design.

Response: Contested. Wheels form no part of the patented design. That the TBC side table uses different legs is irrelevant.

25. There are no molding strips vertically attached to the four corners of the table.

Response: Contested. There are molding strips vertically attached to the four corners of the table.

26. The overall impact of the TBC table is that it arches toward the user as opposed to the Forecast table which simply projects a classic cubic design, without any sweeping or arching feature.

Response: Contested. The overall impact of the TBC table is virtually identical to that of the '902 patent.

27. The aspect ratio of width to height is approximately 1.0 in the Forecast design and clearly < 1.0 in the TBC design

Response: Contested. The aspect ratio is approximately the same.

28. As with the CROSSFIRE analysis above at paragraphs 1-14, supra., the differences in the "overall appearance" as well as the individual features of the Forecast '902 design (Exhibit 2) and TBC's side table (Exhibit 6) are so numerous and substantial that no "ordinary observer" would likely be confused into buying TBC's side table product thinking it was a Forecast product based upon the '902 design.

Response: Contested. It is Plaintiff's position that the similarities between the overall design appearance, and the individual design features of TBC's side table and the design of the '902 patent are so numerous and substantial that an "ordinary observer" would likely be confused into buying TBC's side table thinking it was a Forecast product.

Respectfully submitted,

Dated: April 2, 2008

/s/ ____________________________

By: Bruce D. Katz, Esq. (BK-2041)
Bruce D. Katz & Associates
225 Broadway – 37th Floor.
New York, NY 10007
(212)233-3434

*Attorney for Plaintiff*
*Forecast Consoles, Inc.*