Bruce D. Katz, Esq. (BK-2041)
Bruce D. Katz & Associates
225 Broadway – 37th Floor.
New York, NY  10007
(212)233-3434

*Attorneys for Plaintiff*
Forecast Consoles, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| FORECAST CONSOLES, INC., | ) | ECF CASE |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| TBC CONSOLES, INC., TIME BASE | ) | |
| CORPORATION and JERRY HAHN, | ) | CIVIL ACTION NO. |
| | ) | 07-CV-3106(KMW)(KNF) |
| | ) | |
| Defendants. | ) | |

_____)

## PLAINTIFF'S REPLY TO DEFENDANTS' COUNTERSTATEMENT PURSUANT TO LOCAL RULE 56.1 AS TO PLAINTIFF'S PROPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGMENT OF PLAINTIFF'S U.S. PATENT NO. 7,125,088.

## PRELIMINARY STATEMENT

Defendant TBC Consoles, Inc. ("TBC") has submitted a Responsive Local Rule 56.1

Statement to Plaintiff's Statement of Undisputed Facts Concerning TBC's infringement of

Plaintiff's U.S. Patent No. 7,125,088.  Plaintiff hereby submits its reply.

I.      **Reply to Defendant's Legal Statements.**

    A.      **The Subject Matter of the '088 Patent.**

The '088 patent allegedly covers a multi-media workstation having a master rail with a longitudinal slot for permitting horizontal adjustment of the various components of the workstation such as audio visual equipment.  The components of the workstation each include a "finger" engaged in the longitudinal slot of the rail extrusion so that the component is able to be horizontally translated along the length of the rail.  All the claims require a "finger" engaged in the rail slot which can be translated horizontally along the rail.  Before there can be infringement of a utility patent, all elements in a claim must be present in an infringing product.

    <u>Plaintiff's Reply:</u>      The '088 patent discloses a workstation having a longitudinally-extended extrusion serving as a mounting member for audiovisual equipment and having mounting surfaces for movably engaging conforming mating surfaces extending from audiovisual equipment supports to enable longitudinal movement of the supports along a length of the extrusion.  All elements of the claims of the '088 patent are present in one or more embodiments of TBC's accused IntelliTRAC products.  However, in an effort to evade a finding of infringement, TBC has continually redesigned its IntelliTRAC products while still embodying the essence of the invention recited in the '088 patent.

    B.      **Infringement.**

It is not enough for a patentee to merely read the words of a patent claim on an accused device using whatever definitions of the words the patentee finds convenient.  First, the Court must conduct a Markman hearing to construe the meaning of the words to one of ordinary skill in the art, usually requiring technical expert testimony, to determine what the "terms of art" mean in

the particular field of the invention. For example, is a "finger and slot" combination the same as a "slide and groove," and what is a "finger" in the media workstation art? *Markman v. Westview,* 52 F.3d 967, 517 U.S. 370 (1996). Next, the Court must determine if the accused device is the same as the claimed device in structure, function and result. Merely reading words of a claim in an attempt to describe the accused device is insufficient. Even if a patent claim literally reads on an accused device, the same function may be performed in a substantially different way so as to invoke the "Reverse Doctrine of Equivalents" and compel a conclusion of non-infringement. *Westinghouse v. Boyden*, 170 U.S. 537,538 (1898); *Texas Instruments v. US.*, 846 F.2d 1369, 1371 (Fed. Cir. 1988).

Plaintiff's Reply:    The words used in the claims of the '088 patent t should be defined based on intrinsic evidence rather through the use of self-serving expert testimony offered by TBC to justify an overly narrow interpretation designed to exclude its accused products from a finding of infringement.

C.    Validity Under 35 U.S.C. § 103.

An invalid patent cannot be infringed. Here the claimed workstation is basically a table comprising elements which have been known and used for many years. (Please see prior art cited by Examiner on the face of the patent.) When there is such a patented combination of old elements, invalidity under 35 U.S.C. §103, i.e., "obviousness", must be examined. In this case, expert testimony "is needed" for the "level of skill in the art," the "difference" between the invention and prior art and other technical determinations. *Peterson Co. v. Central Purchasing Inc.*, 740 F.2d 1541, 1547 (Fed. Cir. 1984).

Plaintiff's Reply:    Virtually all inventions are a combination of known elements. TBC's attempt to persuade the Court that Forecast's patents are obvious for this reason cannot

succeed.  Otherwise, the ability to obtain or enforce a patent would not exist.  The combination

of known elements to produce a structure that differs from the prior art in a novel and non-

obvious way is the essence of invention.  In any event, validity is not an issue in the context of a

motion for summary judgment of infringement.  The issues of infringement and validity are

separately addressed in an action for patent infringement.  Moreover, TBC has failed twice in its

efforts to have the Patent Office invalidate Forecast's patent.

      **D.**    <u>**Inventorship.**</u>

      Without exhausting the list of issues which cannot be resolved by Summary Judgment in

this case regarding this utility patent, there is a very serious issue of inventorship.  Defendants

will prove that William Haberman is, at best, a co-inventor of the patented workstation.  The so-

called master rail system claimed in the patent was conceived and reduced to practice by former

employees or consultants.  It is not known what contribution Mr. Haberman may have made, if

any.  Defendants' proof consists of three signed declarations by former employees or consultants

of plaintiff, all of which state that Mr. Haberman did not conceive of the use of a horizontal rail,

or a "finger" engaged in the rail so that components can be horizontally translated along the rail

or of the elements in the design patents.  All three declarants will so testify at trial.  It is also to

be noted that as part of the discovery process defendants requested from plaintiff any documents

showing that Mr. Haberman was an inventor.  Plaintiff produced no documents and

acknowledged that there are no such documents.  Mr. Haberman's improper claim to

inventorship has two consequences:

      1.  Nonjoinder of an inventor which includes deceptive intent on the part of a named

inventor renders the patent invalid for inequitable conduct.  *Stark v. Advanced Magnetics Inc.*,

119 F.3d 1551, 1556 (Fed. Cir. 1997).

2.  Even assuming that Mr. Haberman was somehow deemed a joint inventor, in the absence of an agreement to the contrary, each joint inventor is a joint owner having an undivided equal interest in the invention as a whole.  In *Ethicon, Inc. v. U.S. Surgical Corporation*, 135 F.3d 1917 (Fed. Cir. 2001) an unnamed joint inventor with equal rights to the patent-in-suit assigned his rights to the defendant in the case.  Plaintiffs case was then dismissed as the defendant had every right to practice the invention assigned to it by the unnamed inventor.  The facts, which defendants will prove at trial, in this case are so similar to the facts in Ethicon as to compel the same result, i.e., the dismissal of plaintiffs case for infringement.

Plaintiff's Reply:       William Haberman is the sole inventor of the subject matter recited in the claims of the '088 patent.  Contributions made by others with computer-aided drafting skills and/or manufacturing skills do not rise to the level of invention.  Moreover, in the absence of an agreement to the contrary any designs created by an employee in the scope of their employment as a designer are the property of their employer.

**II.    Plaintiff's Reply to Defendant's Responsive Local Rule 56.1 Submission.**

Pursuant to the March 5, 2008 Order of this Court, Plaintiff respectfully responds to some of the statements contained in Defendants' Responsive Local Rule 56.1 statement as follows:

**Proposed Undisputed Fact No. 8.**

TBC's IntelliTrac products have at least two vertical frames having an upper mounting surface thereon.

Defendant's Response:       Regarding plaintiffs eighth unnumbered paragraph, defendant responds that its vertical frames are similar to many prior art table leg supports and are wholly different from plaintiffs vertical frames and that the term mounting surface must be defined by the Court in a Markman hearing. Thus, defendants deny this proposed fact.

Plaintiff's Reply:    TBC does not dispute that its IntelliTRAC products have two vertical frames.  The claims of the '088 patent do not recite any specific configuration of these elements.  Differences between the frames used in the commercial embodiments of the parties' competing products are not relevant to the issue of patent infringement.  TBC's request for a Markman hearing does not foreclose summary judgment of infringement since claim language is construed as a matter of law.  Further, Markman hearings are often conducted in combination with the argument of summary judgment motions and are frequently non-evidentiary hearings in which counsel provide oral presentations as to the technology involved and discuss intrinsic evidence supporting their proposed interpretation of disputed claim terms.  This type of hearing is wholly consistent with the presentations made in the context of a summary judgment motion

**Proposed Undisputed Fact No. 9.**

TBC's IntelliTrac products have a rail extrusion mounted to said mounting surface of said vertical frames and connecting said frames, said rail extrusion having an upper surface, a lateral surface and a longitudinal slot formed in each of said upper surface and said lateral surface.

Defendant's Response:    Regarding plaintiffs ninth unnumbered paragraph, defendants respond that they use extrusions in their product of the type that have been used since long before the filing date of plaintiffs patent application. The remaining terms of this proposed fact must be defined by the Court in a Markman hearing and are thus denied.

Plaintiff's Reply:    TBC does not deny that its IntelliTRAC products include an extrusion as recited in the claims of the '088 patent.  The claimed extrusion differs in structure and function from that found in prior art relied on by Defendant TBC.

**Proposed Undisputed Fact No. 10.**

TBC's IntelliTrac products have a desktop unit having a finger engaged in said longitudinal slot of said lateral surface of said rail extrusion, wherein said desktop unit is able to be horizontally translated along a length of said rail extrusion.

<u>Defendant's Response:</u>        Regarding plaintiffs tenth unnumbered paragraph, defendants deny that they have such a "finger" within the meaning of the claim either by direct readability or under the Doctrine of Equivalents. Furthermore, whatever element in defendants' product plaintiff is calling a desktop unit is not horizontally translated.

<u>Plaintiff's Reply:</u>        In an effort to avoid a finding of infringement, Defendants seek an extremely narrow interpretation of the word "finger" that differs from its ordinary meaning.  The desktop mounting brackets in TBC's IntelliTRAC product are mounted to permit horizontal translation.

**<u>Proposed Undisputed Fact No. 11.</u>**

TBC's IntelliTRAC products have a vertical support stand for supporting a piece of audiovisual equipment, said vertical support stand having a finger engaged in said longitudinal slot of said upper surface of said rail extrusion, wherein said support stand is able to be horizontally translated along a length of said rail extrusion.

<u>Defendant's Response:</u>        Regarding plaintiffs eleventh unnumbered paragraph, defendants deny that they have such a "finger" within the meaning of the claim either by direct readability or under the Doctrine of Equivalents.

<u>Plaintiff's Reply:</u>        In an effort to avoid a finding of infringement, Defendants seek an extremely narrow interpretation of the word "finger" that differs from its ordinary meaning.

**Proposed Undisputed Fact No. 13.**

In TBC's IntelliTRAC products, said rail extrusion further includes an inclined surface disposed at a downward angle with respect to said upper surface, said inclined surface having a longitudinal slot formed therein."

<u>Defendant's Response:</u>        Regarding plaintiffs thirteenth unnumbered paragraph, defendants deny that their track includes anything more than what has been made and sold prior to plaintiffs filing of its patent application and that the recited terms must be defined by the Court in a Markman hearing. Thus, defendants deny this Proposed Undisputed Fact.

<u>Plaintiff's Reply:</u>      None of the prior art relied on by TBC disclosed the use of an extrusion with slots as recited by the claims of the '088 patent and included in TBC's IntelliTRAC workstations.

**Proposed Undisputed Fact No. 15.**

In TBC's IntelliTrac products, said desktop unit comprises a work surface and at least two desktop brackets for supporting said work surface, said desktop brackets each including a finger engaged in said longitudinal slot of said lateral surface of said rail extrusion.

<u>Defendant's Response:</u>        Regarding plaintiffs fifteenth unnumbered paragraph, defendants deny that any of their products include a "finger" within the meaning of plaintiffs claim.

<u>Plaintiff's Reply:</u>      In an effort to avoid a finding of infringement, Defendants seek an extremely narrow interpretation of the word "finger" that differs from its ordinary meaning.

8

Respectfully submitted,

Dated: April 9, 2008

/s/ _____

By:  Bruce D. Katz, Esq. (BK-2041)
     Bruce D. Katz & Associates
     225 Broadway – 37th Floor.
     New York, NY  10007
     (212)233-3434

     *Attorney for Plaintiff*
     *Forecast Consoles, Inc.*